UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

SHERRY COUNCIL BENNETT,

Plaintiff,

v.                          4:11-cv-124

PREMIERE CREDIT OF NORTH AMERICA, LLC, and EDUCATIONAL CREDIT MANAGEMENT CORP.,

Defendants.

## ORDER
### I. INTRODUCTION

Before the Court is Defendant Premiere Credit of North America, LLC's ("Premiere") Motion for Summary Judgment. *See* Doc. 44.

This lawsuit arises out of the administrative garnishment of Plaintiff Sherry Council Bennett's ("Bennett") wages by Educational Credit Management Corporation ("ECM") and Premiere in their attempt to collect money allegedly owed on a student loan. *See* Doc. 1-1. The Court previously granted ECM's motion for summary judgment. *See* Doc. 38.

### II. ANALYSIS

Premiere moves for summary judgment as to all claims asserted in Bennett's complaint. *See* Doc. 44.

#### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on summary judgment, the Court views the facts and inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Cntys.*, 941 F.2d 1428, 1437 (11th Cir. 1991).

"The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The nonmoving party then "may not rest upon the mere allegations or denials of [his] pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Gonzalez v. Lee Cnty. Hous. Auth.*, 161 F.3d 1290, 1294 (11th Cir. 1998). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material only if it might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248.

Courts may consider all materials in the record, not just those cited by the parties. FED. R. CIV. P. 56(c)(3).

### B. Higher Education Act ("HEA")

Bennett alleges that Premiere violated 20 U.S.C. § 1095a(a)(2)-(5) of the HEA. *See* Doc. 1-1 at 4-5. Premiere argues that Bennett's HEA claims should be dismissed because the HEA does not provide a private cause of action. *See* Doc. 44 at 3-5. Bennett does not directly address this contention but instead argues that Premiere is not a guaranty agency able to "utilize the procedures and exemptions" of the HEA. *See* Doc. 48 at 8-15. Bennett, however, states that "the HEAA did not provide a private remedy to debtors for improper actions by the collector." *See id.* at 16. Undaunted, Bennett proceeds to argue that Premiere has not demonstrated that it exercised "due diligence" as required under 34 C.F.R. §§ 682.410-.411. *See id.* at 17-18.

As the Court previously determined in its October 20, 2011 Order, Bennett has no independent cause of action for alleged violations of the HEA. *See* Doc. 38 at 4-5. "While the HEA endows debtors with certain rights during the wage garnishment process, the HEA expressly empowers only the Secretary of Education—not debtors—with the authority to enforce the HEA and rectify HEA violations." *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1123 (11th Cir. 2004). "It is well-settled that the HEA does not expressly provide debtors with a private right of action." *Id.; see also McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1224-25 (11th Cir. 2002) (concluding that the HEA does not create an implied private right of action).

Therefore, Bennett has no private cause of action for HEA violations. Moreover, Bennett cannot pursue her claims that Premiere violated "due diligence" requirements. The regulations cited, 34 C.F.R. §§ 682.410-.411, were enacted pursuant to the HEA and "articulate the standards for diligent collection of student loans." *See Cliff*, 363 F.3d at 1122-23. Any violation of the regulations is essentially a violation of the HEA. As discussed, Bennett has no private cause of action for HEA violations. Thus, Premiere's motion for summary judgment as to Bennett's claims under 20 U.S.C. § 1095a is **GRANTED**.

### C. Fair Debt Collection Practices Act ("FDCPA")

Bennett also alleges that Premiere violated 15 U.S.C. § 1692g by failing to provide a validation and 15 U.S.C. § 1692c(b) by "communicating with the Plaintiff's employer to cause deductions to be made from her earnings." *See* Doc. 1-1 at 5-6. Premiere argues that the HEA requires a withholding order to be sent to the employer and thus this order cannot constitute an FDCPA violation. *See* Doc. 44 at 12.

Bennett does not directly address Premiere's contention, but argues that Premiere is not a guaranty agency subject to "the procedures and exemptions" under the HEA. *See* Doc. 48 at 8. Bennett cites several cases and regulations explicating the responsibilities of guaranty agencies and whether these agencies' collection activities are exempt under the FDCPA. *See id.* at 9. Bennett appears to intermingle the FDCPA and HEA. More relevant to her underlying claims, Bennett contends that the FDCPA is applicable to third-party debt collectors. *See*

2

*id.* at 16-17. Bennett also appears at times to reference the wrong case. *See id.* at 15-16 (referencing the Georgia Student Finance Commission, who is not a party to this case). In addition, Bennett cites case law discussing particular FDCPA provisions that Bennett does not allege Premiere violated. *See id.* at 7-8 (citing case discussing 15 U.S.C. § 1692e).

As previously adjudicated, ECM is a guaranty agency pursuing administrative wage garnishment. *See* Doc. 38 at 5. Premiere, however, is an accounts receivable collection contractor. *See* Docs. 44 at 3; 44-1 at 5. ECM utilized Premiere in attempting to collect from Bennett. *See* Docs. 44-1 at 5, 19; 44-2 at 3. As part of the administrative garnishment process, ECM and Premiere issued Bennett's employer a withholding order. *See* Doc. 44-1 at 19-21.

Third-party debt collectors, such as Premiere, acting on behalf of guaranty agencies to collect federal student loans must comply with the FDCPA. *See Cliff,* 363 F.3d at 1123-24. Moreover, although not cognizable as an independent cause of action, a violation of the HEA can give rise to a cause of action under the FDCPA. *See id.* at 1127.

15 U.S.C. § 1692c(b) of the FDCPA provides:

> [W]ithout the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

The HEA, however, entitles the guaranty agency to issue the debtor's employer a withholding order. *See* 20 U.S.C. § 1095a; 34 C.F.R. § 682.410(b)(9)(i)(H). Moreover, the Department of Education has authorized guaranty agencies to use collection contractors to perform, on the agency's behalf, many of the activities needed for the agency to collect through administrative wage garnishment. *See* Doc. 44-2 at 4-5, 7; *see also Cliff,* 363 F.3d at 1122-23 (recognizing that third-party debt collectors act on behalf of guaranty agencies to collect money owed on loans). Bennett seemingly concedes that Premiere is authorized to pursue collection of student loans when she asserts that the HEA's due diligence requirements are applicable to Premiere's actions. *See* Doc. 48 at 17-18.

In construing the HEA and the FDCPA's provisions, the Court is mindful that "a more specific statute will be given precedence over a more general one, regardless of their temporal sequence." *Bosarge v. U.S. Dep't of Educ.,* 5 F.3d 1414, 1419 (11th Cir. 1993) (quoting *Busic v. United States,* 446 U.S. 398, 406 (1980)). Thus, the "specific requirements of [HEA regulations] take preference over any general inconsistencies with the FDCPA." *Pelfrey v. Educ. Credit Mgmt. Corp.,* 71 F. Supp. 2d 1161, 1180 (N.D. Ala. 1999). Thus, the Court concludes that the sending of a withholding

3

order to an employer pursuant to 20 U.S.C. § 1095a and its implementing regulations, which specifically require such an order, does not violate 15 U.S.C. § 1692c(b)'s more general proscriptions against communication with third parties.

Because ECM is authorized to undertake administrative wage garnishment and Premiere is authorized to assist in the collection activities, Premiere is not liable under 15 U.S.C. § 1692c(b) of the FDCPA. Moreover, the withholding order clearly delineates ECM as the party ordering the withholding and the party to be paid. *See* Doc. 44-1 at 19-21. Thus, Premiere's motion for summary judgment as to Bennett's claim under 15 U.S.C. § 1692c(b) is **GRANTED**.

Although Bennett alleged a violation of 15 U.S.C. § 1692g in her complaint, *see* Doc. 1-1 at 5, Bennett does not now argue or demonstrate how Premiere violated that section. Instead, she argues that Premiere is not a guaranty agency, but a debt collector, and that the FDCPA applies. *See* Doc. 48 at 8-17. Yet, it is undisputed that the FDCPA generally applies to third-party collection contractors such as Premiere. Instead, the pertinent question is whether Premiere actually violated any provision of the FDCPA.

Bennett, however, makes the general argument that because Premiere failed to file a counterclaim and prove the debt owed, then Premiere violated the FDCPA. *See* Doc. 48 at 18. Bennett does not link this argument with 15 U.S.C. § 1692g or any other provision of the FDCPA. Moreover, Bennett never specifies which subsection of § 1692g Premiere purportedly violated. "It is not the [C]ourt's function to weed through the summary judgment submissions in search of evidence to support [Bennett's] position." *Foster v. Mid State Land & Timber Co.*, 2007 WL 3287345, at *11 (M.D. Ala. Nov. 5, 2007). Therefore, Bennett's claim under 15 U.S.C. § 1692g is ***DISMISSED***.

### D. State Law Claims

The dismissal of Bennett's federal claims do not deprive the Court of supplemental jurisdiction over the remaining state law claims; the Court has the discretion to consider non-diverse state law claims where the Court has dismissed all claims over which it had original jurisdiction. *See Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1567-68 (11th Cir. 1994). Because of the overriding question of federal preemption, the Court will consider the state law claims.

Bennett alleges that because Premiere violated the HEA and FDCPA, Premiere was required to obtain a judgment prior to garnishing her wages under O.C.G.A. § 18-4-46. *See* Doc. 1-1 at 6. Bennett claims that Premiere's failure to obtain a pre-garnishment judgment resulted in the tortious conversion of her wages and that the communications with Bennett's employer constituted tortious interference with her employment relationship. *Id*. Moreover, Bennett alleges that the failure to obtain a prior judgment made each garnishment a violation of various Georgia theft laws, including O.C.G.A. §§ 16-8-3(a)-(b) (theft by deception), 16-8-4 (theft by conversion), 16-14-3(8)(A) (racketeering) and constituted

4

solicitation pursuant to O.C.G.A. § 16-14-3(9)(A). *Id.*

Premiere argues that Bennett's state law claims are preempted by federal law. *See* Doc. 44 at 5-14. In response, Bennett does not specifically address preemption or even clearly articulate the grounds for her state law claims. *See* Docs. 48; 50. Instead, she argues that Premiere's failure to file a counterclaim and present evidence of the existence of a debt caused Premiere to violate the Georgia garnishment statute, entitling her to "other claims" and "RICO recovery." *See* Doc. 48 at 18. She also argues that Premiere cannot benefit from any HEA exemptions. *See* Doc. 50 at 2.

Federal law grants ECM, a guaranty agency, the right to pursue administrative wage garnishment. *See* 20 U.S.C. § 1095a; 34 C.F.R. § 682.410(b)(9). O.C.G.A. § 18-4-46, however, requires a court judgment before the institution of wage garnishment.

ECM is the holder or owner of the purported debt. *See* Doc. 44-1 at 2, 4. Premiere was authorized to act on behalf of ECM in attempting to collect the debt. *See id.* at 5; Doc. 44-2 at 2-5, 7. The Eleventh Circuit in *Cliff* held that 20 U.S.C. § 1095a(a)'s "[n]otwithstanding any provision of State law" clause expressly preempts "limitations on pre-judgment garnishment under state law" which would "foreclose the garnishment remedy contemplated by the HEA." *Cliff*, 363 F.3d at 1125. The Georgia garnishment statute would foreclose a guaranty agency's ability to pursue administrative wage garnishment under 20 U.S.C. § 1095a and is therefore preempted. *Cf.* 34 C.F.R. § 682.411(o). Thus, ECM was not required to obtain a court judgment before pursuing administrative wage garnishment. *See also* Doc. 38 at 8-9.

To the extent Bennett contends that a collection contractor such as Premiere acting on the behalf of a guaranty agency cannot benefit from the preemptive effect of the HEA, *see* Doc. 48 at 1, such contention is meritless. *See Cliff*, 363 F.3d at 1124-31 (discussing what state law claims the HEA preempted in the context of suit against third party debt collector); *Nelson v. Diversified Collection Servs. Inc.*, 961 F. Supp. 863, 872 (D. Md. 1997) (HEA precluded guaranty agency and collection agency from having to abide by Maryland writ and service requirements).

Because Bennett bases her state law claims on the failure to obtain a judgment under Georgia law and such law is preempted by federal law, Bennett's conversion, theft, RICO, and solicitation claims are preempted. *Cf. Educ. Credit Mgmt. Corp. v. Wilson*, 2005 WL 1263027, at *4 (E.D. Tenn. May 27, 2005). In addition, Bennett alleged that Premiere's communications with Bennett's employer constituted tortious interference. *See* Doc.1-1 at 6. Yet, Premiere is authorized to assist ECM in pursuing collection activities related to administrative wage garnishment. The HEA authorizes the issuance of withholding orders, and Bennett presents no argument that the form of the withholding order was improper. Thus, Bennett's tortious interference claim, argued nowhere in her briefs, fails as well.

5

Therefore, the Court **GRANTS** Premiere's motion for summary judgment as to all of Bennett's state law claims.

### E. Permanent Injunction

Bennett argues that Premiere is required to bring a counterclaim and accordingly establish the amount of debt owed. *See* Doc. 48 at 1-2. She claims the issues of a counterclaim and the existence of a debt are relevant because of her request for a permanent injunction. *See id.* at 2.

Premiere responds that because Bennett cannot succeed on any of the claims raised in her complaint, her prayer for a permanent injunction must fail. *See* Doc. 44 at 14.

A plaintiff requesting a permanent injunction must demonstrate:

> (1) that [the plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Bennett has the burden of persuasion as to establishing the prerequisites. *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983).

To justify a permanent injunction, Bennett must show actual success on the merits. *See Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987). Bennett has failed to demonstrate entitlement to relief under the claims raised in her complaint. Thus, her request for a permanent injunction is **DENIED**.

Moreover, even if Bennett could succeed on her FDCPA claims, equitable relief is unavailable under the FDCPA. *See Sibley v. Fulton Dekalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982); *Hennington v. Bank of Am.*, 2010 WL 5860296, at *7 n.12 (N.D. Ga. Dec. 21, 2010).

Bennett frequently avers that Premiere has not established the existence or amount of debt owed. *See* Docs. 48 at 1-8; 50 at 4. Bennett concludes that liability on the part of Premiere in some unspecified form therefore ensues. *See* Doc. 48 at 18. As evidence of the debt, Premiere attached the affidavits of Julia Lambert, Senior Account Servicing Representative for ECM, and Kathleen Leatherbury, Premiere's Director of Compliance and Licensing, Bennett's student loan application and promissory note, a collection transaction history report, and a copy of a New York state judgment. *See* Docs. 44-1; 44-2.

Yet, the consideration of Bennett's claims in her complaint does not involve the resolution of the debt owed. As discussed *supra*, no private cause of action exists for HEA violations. Bennett has not demonstrated entitlement to relief under 15 U.S.C. §§ 1692c(b) and 1692g of the FDCPA. Lastly, because Bennett's state law claims are predicated on complying with preempted Georgia law, Bennett's state law claims also fail. Thus, Bennett is left with no remaining claims and cannot obtain a permanent injunction, which is a remedy, not an independent cause of action. *See*

*Sanchez v. Homecomings Fin. Network, Inc.*, 2011 WL 5190700, at *6 (D. Nev. Oct. 27, 2011).

Bennett's counterclaim arguments have dubious relevancy to the resolution of her underlying claims. The question of whether a counterclaim is permissive or compulsory is a matter affecting the Court's jurisdiction over particular claims and whether the party may raise the claim in a subsequent lawsuit. *See* 28 U.S.C. § 1367; FED. R. CIV. P. 13. This question does not include whether Bennett can succeed on the particular claims raised in her complaint.

Premiere cites a number of cases demonstrating that where a plaintiff raises claims of FDCPA violations, a counterclaim on the underlying debt is permissive. *See* Doc. 49 at 7-8.

The Court's hypothetical determination of whether a debt collection counterclaim would be compulsory or permissive would have no effect on the Court's resolution of Bennett's claims. As discussed *supra*, Bennett has not demonstrated entitlement to relief on any of the claims alleged in her complaint. The Court's jurisdiction over a party's claims is not at issue. ECM and Premiere's failure to raise such a claim here would not preclude the re-initiation of the administrative wage garnishment upon resolution of the lawsuit. Premiere and ECM had already initiated administrative wage garnishment before the present suit and do not intend to pursue collection through a lawsuit. *See* Doc. 49 at 7 n.6.

Moreover, Bennett's argument that her request for an injunction made a debt collection counterclaim compulsory is meritless. *See* Doc. 48 at 2. Bennett cites no case law in support. An injunction is a remedy, not an independent cause of action.

Bennett has generally failed to address with any particularity the underlying legal violations alleged in her complaint. The complaint and her briefs are not a model of clarity. She is attempting to end-around administrative wage garnishment by demanding a court judgment before ECM, with the assistance of Premiere, can pursue garnishment.

Yet, Bennett is still entitled to an administrative hearing where she can challenge the existence and amount of the debt. 20 U.S.C. § 1095a provides that "the individual shall be provided an opportunity for a hearing in accordance with subsection (b) of this section on the determination of the Secretary or the guaranty agency, as appropriate, concerning the *existence* or the *amount* of the debt . . . ." 20 U.S.C. § 1095a(a)(5) (emphasis added).

> If the individual does not file a petition requesting a hearing prior to [the fifteenth day following the mailing of a garnishment notice], the Secretary or the guaranty agency, as appropriate, *shall* provide the individual a hearing . . . upon request, but such hearing need not be provided prior to issuance of a garnishment order. A hearing . . . may not be conducted by an individual under the supervision or control of the head of the guaranty agency . . . .

*Id.* § 1095a(b) (emphasis added).

### F. Partial Motion for Summary Judgment

Bennett off-handedly avers that she is entitled to partial summary judgment. *See* Docs. 48 at 18; 50 at 1. Bennett however has not demonstrated entitlement to relief on any of her claims; thus, her "motion" for partial summary judgment is *DENIED*.

### III.  CONCLUSION

Premiere's Motion for Summary Judgment, *see* Doc. 44, is *GRANTED*. Premiere is *DISMISSED*. Bennett's partial summary judgment motion, *see* Doc. 48, is *DENIED*. This case is *CLOSED*.

This 8th day of May 2012.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA